Case number 21-1208, Inri Ab Al-Rahim Hussein Muhammad Al-Nashiri, petitioner. Mr. Parody for the petitioner, Mr. Palmer for the respondent, United States. Mr. Parody, good morning. Please proceed. Thank you, Your Honor. Good morning, Judge Henderson, Judge Wilkins, and may it please the Court. It is clear and it is undisputed that torture and the use of evidence obtained by torture, except for the purpose of proving torture, is categorically forbidden by Congress. We therefore ask this will continue to irreparably. Well, counsel, the merits don't seem to have much to do with this case. You've filed plenty of things on that here. You have a great jurisdictional problem, do you not? At least three, maybe four jurisdictional problems. First place, there is a case that says we have, there's one case that says we have jurisdiction to issue a mandamus to the terrorism court, whatever it's called, the military review court, but that was where it's in aid of our jurisdiction. I'm not sure that really gets you there, but assuming you have otherwise jurisdiction here, as far as what's happened in the prior hearing, it's moved, isn't it? No, Your Honor, and if I can address your questions in turn, this court has jurisdiction in order to protect the record on this case, and I think this case, like In re Papa Andrew, In re Clinton just a couple years ago, when you're dealing with even evidentiary issues, but that will get to the integrity of the record that is ultimately available. Assuming we have a mandamus jurisdiction in the first place, you still have to get around mootness, standing, and rightness, and you don't seem to get by many of them, do you? Whatever happened in that prior hearing is moot, is it not? It's not, Your Honor, and if I can point to a few reasons why it's not moot, at least under this court's precedence, the first is that the respondent has disclosed that there is a vast ex parte record, about 100,000 pages, that sit like an iceberg under this case. As long as they're sitting by an iceberg, they're not, you know, they don't give you standing then, do they? Well, they do, because they do. There has to be a harm that is imminent, actual or imminent, and you've been, everything in the record says that it's not the case. Respectfully, I would disagree about the record, Your Honor, because they concede that that record is riveted with military commission prosecutors and military commission judges using evidence obtained by torture, and we have no remedy against that record. But more importantly, there are, the respondents also concede that there are orders by the military commission that remain in effect, which they procured using evidence obtained by torture. Are those orders before us? You're asking for a mandamus about the use of the record? Yes, Your Honor. So that has yet to come. Oh, we, sorry. I don't understand what you're talking about, about the record being out there against us in prior orders. I'm not sure that's even before us. It is, Your Honor, because we sought a petition, in our petition, the relief we sought was essentially mandatory relief, preventing the government from using evidence obtained by torture, preventing the military commission judge from allowing the government, in essence, to use evidence obtained by torture unless authorized by statute, and to vacate any order. But there's not an order giving, harming you from which you can appeal, because the order does not say that it can be used. You're trying to say that it can't be used? Okay, so for right now, it's not being used. That prayer is moved. What is the present harm understanding analysis that is being caused by the respondent that can be remedied in this instance? I would say this case actually looks a lot like True the Vote, which the court decided a few years ago, in which the government has come forward and said it has largely seceded using evidence obtained by torture, but there are still, there's still orders of the military commission, not just the record in this case being tainted, their use of evidence obtained by torture. Personal to your defendant? Personal to our defendant. Denying our defendant discovery based on evidence obtained by torture. The government concedes that in their opposition. They simply say, well, that's a small matter, that doesn't, that shouldn't swallow the rule, but certainly for any justice ability purpose. But the more fundamental problem that I see with your mandamus petition is, if there's a conviction, why can't all of that be reviewed after the conviction? I would say for two principal reasons. One is quite practical, but other I think is quite important. The quite practical reason is the vastness of this record, this ex parte record that we have no ability to seek to have reconsidered. We're actually barred by section 949 P-4 from even seeking reconsideration of the orders that are the product of that ex parte record. That ex parte record is about 100,000 pages pursuant to respondent's stipulation, and we have no ability to review that record. And in fact, that record is actually incomplete, because as we noted in our petition, they don't oppose, and in fact, this court even noted itself in the Altamir case. Not all of this ex parte, all of these ex parte proceedings dealing with typically evidence obtained by torture, to be perfectly candid, but not all of these ex parte proceedings are even memorialized in the record. A number of them are done both ex parte and off the record, either with the military commission judge or the military commission judge's staff. So this court, in the absence of mandatory relief now to scrub the taints of torture from this record, this court will essentially get a 100,000 page ex parte record at least, spanning over a decade, during which neither military commission prosecutors nor military commission judges thought there was anything wrong with using evidence obtained by torture. And it will fall to this court's chambers to determine whether or not evidence was used by torture, and it won't even be able to do that fully because of the amount, not only because of the amount of evidence that they'll be reviewing, but because of the proceedings that are not even memorialized. You're answering this question by saying that the harm is that the record will be tainted with evidence procured by torture and that that should be scrubbed, but what particular injury does that infer upon your client? I would say one, a very practical injury in the fact that in the sense that these orders, certainly the orders that are still in place, all involve withholding discovery. But you haven't brought an appeal from those orders. We're not reviewing those orders. You're asking for a mandamus. I'm not sure what the existence of those orders, how that helps you. And even your cause of trying to get a mandamus, what's going on now? Well, because the mandamus we sought was to vacate any orders that were obtained using evidence obtained by torture. And the government has come, and we're shadowboxing a bit here because we have no access to this hundred thousand page record. And to the government's credit, they came forward and said, we found at least two that are unquestionably painted by torture. That's how got the orders. How do we even know whether those had anything to do with your client? Oh, because they were in the order entered in this case. They were entered in this case. Did you appeal from those orders? Oh, well, we only even learned about them. Indeed, we could only learn about anything that goes on in the ex parte process because of respondents' stipulation in their opposition that these orders, in fact, exist. And so, you know, asking us to prove what's in the ex parte record is, we're blind there, Your Honor. By law, we are blind there. And it's the government that's created this record. But if I could get to the second part of my response to your question, Judge Wilkins, is the important reason is that, you know, torture is different. Torture is poison to the justice system. Supreme Court has held that for over a century. And to allow the use of evidence obtained by torture to poison the record in a capital case, I think not only calls into question the public integrity of these proceedings, but it makes these proceedings an aberration. Torture may be different, but attempts to exclude evidence are not rare at all. Or we're going to be creating a precedent that everybody who wants a motion in limine to keep out a confession or a coerced statement, some other sort of evidence, going to be able to come in here and ask for a mandamus instead of going through the trial process and taking the appeal that it's provided for? Certainly not, because I think torture is different. And in this one respect, I would say... Do you have any authority that says that the procedure for pressing evidence because of torture is any different than for any other motion in limine? I would say the most analogous case, it's only an analogy because, thank God, torture is not an issue that comes up too often in American judicial proceedings. Coerced confessions come up from time to time. They do, but rarely do those... How is that legally different? I mean, I understand that there's a line between torture and coerced confessions, but not always. Sometimes crossed, I think, but I'm not sure it's a legal difference. Test one by a mandamus, you shouldn't be able to judge the other, shouldn't you? If I can answer Your Honor's question just in turn. In respect to precedent, In re Papa Andrew is this court's case saying that when essentially international law questions are implicated by judicial proceedings, that there is a special need for mandamus, even where, for example, an assertion of immunity, as was the issue in that case, would not ordinarily be an appropriate subject for mandamus. And Congress's enactment of Section 948-R-A is taken almost in hoc verba from the Convention Against Torture. Article 15 of the Convention Against Torture categorically forbids the use of evidence obtained by torture in any proceeding. And so by not granting mandamus, essentially, this court is being put in the position of allowing the United States judicial system to become a party, not only to a violation of international law, but use cogent as a violation of international law, one of the most serious international law rules that we have, prohibition against torture. But if I could also just separate perhaps maybe some of your concerns as a practical matter. The difference between sort of torture and coercion, this case I think is an example of that. The statements that initially gave rise to this litigation were taken, and without getting into any classified matters, because there's no concession, when a naked man was being hung by his hands and hooded with a power drill to his head. And I strain to find anything like that in the U.S. reporters. And if you're concerned about opening the floodgates, I think there is a, there are procedures in place, because a prohibition on the use of torture is a prohibition on the use of torture. And here the government does not dispute that the prohibition on the use of evidence obtained by torture was violated. But mandamus is ordinarily not used to grant declaratory, right? Isn't it black leather law that you don't use mandamus for that? Because you bring a declaratory judgment action? You want declaratory relief? And we're not asking for declaratory relief. We're asking to have the orders that the government itself conceived and other orders as well that were obtained using evidence obtained by torture to be vacated. That is, that's an entirely backward-looking, non-forward-looking remedy. And if you're concerned about the floodgates, I think that really is the threshold. We have to show that our entitlement to relief is clear and indisputable. Any mandamus petitioner does. There's a dispute about coercion. I imagine in most of those cases they will not have a clear and indisputable right to relief. Here we have a clear and undisputed right to relief because the government not only concedes that we were correct in objecting to the evidence when they first attempted to introduce it, but that they should not have used it and that that practice that they had been engaged in for 10 years has essentially made the record in this case potentially rivet with evidence obtained by torture. I do see that I've cut into my rebuttal time. I mean, why isn't a better practice here for you to ask the trial court to identify all of the orders that were, I guess, issued against your client's position, so either denying you discovery or allowing the admission of evidence or denying you some sort of relief, to identify every single one of those orders where evidence of torture was admitted in the procurement of those orders and then issue, ask them for a ruling as to all of those orders, that all of those orders should be reconsidered and or withdrawn. And then if you don't like what you get at that point, then you come back to us because then we like know what we're dealing with and we have a case or controversy where we can order some specific relief. You're asking us, you're saying that you're shadowboxing, well we're shadowboxing too then, but you could take some action, it seems, so that we're not shadowboxed. To be fully clear, your honor, we did ask for that in the CMCR and the CMCR said that that was not right. But if I could point to just two other obstacles that we would confront in getting that relief in the first instance for the military commission. The first is the military commission judge in this case has ruled on the merits on this issue and even though that decision was sort of vacated in a reverse Munsingware, that under this court's precedence, Action Alliance being the most obvious, that's still a precedential opinion that has not been countermanded by any court. So that is the law of this case. Second, as I mentioned briefly before, under section 949p-4, we're actually precluded from seeking reconsideration of any order dealing with classified discovery. So we would essentially be asking for an inquiry into something that we would be in essence relying on the good graces of either the military commission or the government to respond to attempt to remediate. And again, we're not, we're not asking. Nonetheless, as far as doing anything about the use of this evidence improperly that we can do something about, why isn't the procedural path to go to trial and if it's used against you, then appeal? If it's not used against you, then the question remains moot like it is now. That's not correct, your honor, because the statute and frankly international law, but more importantly, I think the statute, forbids the use of evidence obtained by torture at any stage of the military commission litigation. And we already have discovery orders that are still in effect that have withheld exculpatory potentially evidence, the names of witnesses in fact, from us. I don't know that the international law has anything to do with discovery. What we can grant relief on, it would be the improper use of it. That's correct. If it is used at trial, then you get to appeal it. If it's not used, then you don't have a case. But the statute sweeps broader than that. And that's ultimately what brought this case here, your honor, is that the statute forbids not simply the use at trial, but the use in any stage of the proceeding. And they have used it at various stages of the proceeding. They have orders. And those have been done and they're moot. That's not correct, your honor. Those orders remain in effect. Those orders were not, those orders literally today remain in effect. So we are in the same exact position we were when we first filed this objection to the decision of the military commission when it ruled that it could use evidence obtained by torture for any purpose other than trial. And that's the problem here. The government essentially has used this evidence. They've built a massive record using evidence obtained by torture to shape the discovery that we have available to us in a capital case. I guess here's where, I guess there's a disconnect here. If you have requested exculpatory evidence or a name of a witness, something where you were saying, give me something and it wasn't given to you. And part of the reason it wasn't given to you was because of some evidence of torture that was admitted in an ex parte proceeding. And that formed part of the reason of why that wasn't given to you. If there is a conviction, you can raise as one round of error that there was something that we wanted given to us that wasn't given to us, right? So we can, but again, I think the limitations, and I don't want to repeat myself, but I think the limitations of that are, is it everyone is going to frankly know that torture has painted this case that these are the torture tribunals. But I think more importantly, the only reason we even know about those two orders is because my friend, again, to their credit, disclosed them in their opposition brief. And again, just like through the vote, you can't be, mootness is an offer on factor. You can't be a little bit pregnant and you can't be a little bit moot. They've either ceased the case or it's not. And it's at least not moot because those two orders are still in place. And we only know about those orders because they disclosed them. The existence of other orders is either going to be left. How do we remedy that? We actually don't have a way because of the ex parte character of those proceedings to remedy that ourselves, which means the only solution to that will be this court reviewing that record ex parte through its chambers and attempting to divine potentially how these rulings might have affected the case. And I, to the extent mandamus again is about protecting this court's jurisdiction, the easiest way, the most practical way, and I don't think it would be a heavy burden, frankly, for the government to me, would be to simply vacate the ex parte record and allow the government to resubmit motions clean of evidence obtained by torture to ensure that when the record does come up to this court, it's not trying to parse when potentially torture may have implicated it. And for the reasons, I know I'm over my time, but if I could just say one more point. For the reasons I identified in our 28-year letter from about a month and a half ago, it's not always going to be obvious when evidence obtained by torture, not even evidence obtained by torture involving this case is being used. That's a fairly subtle process. And we do think that should be done in the first instance in the military commission. And the only way that will be done is if this court vacates the ex parte record, which will give an impetus both to respondent and to the military commission judge to proceed and clean up the record on this case under a correct view of the law. Under what, frankly, respondents now concede is a correct view of the law. So I do see, Your Honor, that I have gone over my time. All right. Thank you. We'll give you a couple of minutes in reply. Mr. Palmer. Thank you, Your Honor. Good morning. May it please the court. I'm Joseph Palmer from the Justice Department. Our primary submission is that the petition for mandamus is not right. The government withdrew the statements that gave rise to this litigation. The CMCR vacated the order that held that they were inadmissible. And the government now agrees that Section 948RA applies at all stages of a military commission case. And the government also acknowledges that to the extent that there are pre-existing orders in the ex parte record that are predicated on statements obtained through torture, that those orders should be vacated and reconsidered without the statements. But as the CMCR noted, the military trial judge has not yet been asked to conduct a process to make sure that such orders exist. Your friend on the other side says that the rules preclude them from making such an act. I don't think the rules preclude the petitioner from moving the military commission to identify whether any such orders exist, particularly in the context where the government agrees that if there are such orders, they should be reconsidered. And so the reconsideration could take place once they're identified on the motion of the military commission. So let's suppose we deny the mandamus petition on the grounds that we're kind of holding you to the representation that you're making, that that's the position that you're going to take. And it gets remanded. And for whatever reason at the military commission, the judge refuses to grant that relief and refuses to reopen the record or scrub the record, so to speak. Do we have mandamus jurisdiction then if he brings another petition? I think in that circumstance, well, first I think that he would be required to go back to the CMCR because essentially the CMCR said that the case was not right because that process had not yet occurred. And then the CMCR said that if that process did occur, that that would be the rightness problem. We still think there is a mandamus jurisdiction problem because the mandamus standard requires that the issue not be capable of being reviewed on appeal from final judgment. And we think that this issue of admissibility of evidence is capable of being reviewed in that circumstance. But we do agree, we don't dispute that that- How can it be reviewed if petitioner's counsel isn't privy to it? Well, a review of ex parte records routinely takes place in Article III courts, for example, under the Classified Information Procedures Act. That act and the Military Commissions Act has provisions that closely parallel CPAC. And that act requires that the ex parte submission be recorded in the record, made available for the post-judgment review by the appellate court. And so this court's review could take place the same way as it does in national security prosecutions in Article III court, reviewing district court determinations under CEPA, the same way as occur in this case. I understand the CEPA process, but it's very easy to kind of identify what we are reviewing because all of the information that we're reviewing is classified. And so the question is, should it have been turned- over? Should it have been redacted? Was there an adequate substitute that was provided, et cetera, et cetera. Here, the review would be quite different, wouldn't it? We would get hundreds of thousands of pages and then, without any guidance from the petitioner, have to, on our own, go through and see if there is any evidence that was admitted due to torture. And we're supposed to pick through that and figure that out and remedy that if that occurred? Well, we don't dispute that the military commission judge who issued those orders should do that review in the first instance. And the government itself has begun conducting that review also. And we have every incentive to correct any errors that may exist in the existing record. And following that process, of course, there would be the review by the CMCR, which has full de novo fact-finding review power. And in that circumstance, then, there would be, have already been a final judgment and review by the CMCR to refine the issues that might remain for this court's review. And in terms of the difficulty, again, from our perspective, the military commission judge is the one in the best position to conduct that review in the first instance. And then the court would have for it that court's process and determination of how it made the judgment that the record was free from errors under Section 948RA. That kind of gets us back to where we began, which is what if the military commission judge declines to undertake that review or to entertain a motion from a petitioner on remand? You're saying, well, then they would appeal that to the CMCR. And then let's suppose the CMCR doesn't take any action or affirms. Do we have mandamus jurisdiction at that point? Well, I think that would cure the ripeness issue. That case would be ripe. I think we would still take the position that that's because it's an issue of admissibility of evidence that it could be reviewed on any appeal after final judgment. But I don't think that there's a likelihood that the military commission judge would do that because in the context of the statements that agreed to the government's request to withdraw the statements and did reconsider that order without relying on the statement. And I don't think there's any reason to doubt, especially where the government agrees that that review should occur, the military commission judge should be given the opportunity to conduct that review in the first instance. If I could say one briefly about the two orders that we've already identified through our own process. The government has also moved to have those orders reconsidered as well. And so as the record now stands, there are no orders of which the government is aware that contains section 948RA errors that the government hasn't thought to reconsider. And we acknowledge that to the extent that the military judges process exposes that there are any further such orders that they could be reconsidered without such state. So you're making the representation that that is the position of the government and that that's those are the actions that the government is going to undertake. Yes, the government has already begun a review process as we described. And the government has every incentive to make sure that the do its best to make sure that the record doesn't contain within section 948RA errors. And we also don't dispute that the military commission judge should be given the opportunity to do that review itself. And as the CMCR noted, the military judge hasn't yet been asked to do that review. But we acknowledge that that review would be appropriate. So you're answering my questions very carefully, which I would expect that you would. But you're answering, I asked the question the way that I did for purpose, because you are asking us to rule in a certain way based on representations. My view of that is that if I'm going to take you up on that, you should be stopped from acting contrary to the representations that you make to this court that caused us to grant you the relief or to decline to grant petitioner the relief. You said the government has every incentive to take certain action. But you didn't say that the and that you were representing to the court, that that is the course that the government is going to undertake. You understand my question? I think so, except that I'm not completely sure of what is the action that the court is asking me to confirm that the government will take. Well, I've asked a series of questions about if this isn't right, then how will it become right? And how can petitioner get relief before the military commission with respect to reconsideration and or the vacature of orders? And I heard your last response saying, well, we have every incentive to make sure that that happens. What I'm trying to understand is, are you making a representation that you are going to move for that to happen and not oppose a motion that is made by petitioner below for that to happen? Because if you're not prepared to make that representation, then we need to know that now. Thank you, your honor. So I, we do not dispute and will not oppose a review by the military commission judge to conduct a review to identify whether any ex parte orders exist that contain section 948RA errors. We agree that that process should take place in the military. Thank you. What about the issue that was the subject of the most recent 28-J letter with respect to the admissibility of evidence that may or may not have been procured as a result of torture that comes from a third party witness. Does that affect the ripeness or mootness here? I can't speak specifically to the statements that were made earlier this week. I just haven't had the chance to specifically review that transcript, but let me, I can say that the government's with respect to section 948RA is that statements obtained through torture of anyone, whether it is the defendant or the, or a third party are inadmissible under section 948RA at any stage of the proceedings. And with my understanding, and again, this is just based on a sort of report, is that the issue being discussed in the military commission has to do with derivative evidence, not statements that were directly obtained from a third party. And on that issue, I think the government hasn't yet established a position. But with respect to whether the government doesn't maintain that under section 948RA, statements of third parties are admissible. I don't think that issue is raised in the petition that's before you now, that the statements that gave rise to this litigation were statements of the petitioner and the parties haven't briefed the issue of statements of third parties or issues of to file a response to the 28 day letter to clarify what was said earlier this week. Thank you. Well, Mr. Palmer, you, in your brief at 25, you're pretty categorical. You say, and I quote, the government has now concluded that section 948RA prohibits the admission of degrading treatment at all phases of a military commission. Are we now supposed to take that categorical statement and read into it so long as the torture or cruel, inhuman or degrading treatment concerned only the detainee who is on trial? No, Your Honor. The government's position is that the statute, under the statute bars admission of statements obtained through torture of any person, whether it was the defendant or a third party, either way, the statements are admissible. All right, so what about this 28-J letter that says the prosecution indicates that it was the position of the United States that 948RA only prohibited the use of evidence obtained by torture against the accused, not third parties. How was that indicated? I mean, this is a pretty serious change in position, if it's true. Your Honor, what I can say before you now is that that's not the government's position. The government's position is that statements obtained through torture of third parties are inadmissible and that I understand the issue that was discussed in the military commission to relate to derivative evidence, not statements obtained that were directly obtained, but I just ask the court's indulgence to give us a chance to respond to the 28-J one-sided. But I at least want you to respond to this 28-J letter. Yes, the government will do so, Your Honor. All right. Is there no further questions? Thank you. All right, Mr. Pera, why don't you take a couple minutes? Thank you, Judge Henderson. Just respecting the 28-J, I was informed by Captain Miser that we can provide that to this court under seal in case there's any ambiguity. At least as we understood it, and certainly based on the reporting from the New York Times, the position of the military commission prosecutor was that, yes, it began as a dispute about derivative evidence, but the argument was essentially made as the alternative argument that evidence obtained by torture of third parties was not subject to 948R. I'd leave on a standing challenge if I understand the framing of the argument correctly, but we'll provide the transcript to this court, so there's no question. I want to actually touch on the main point, I think, of agreement between the parties. I 100% agree that the military judge is in the best position to do this kind of audit, certainly not this chamber's, you know, a decade from now when this case is on post-trial appeal, just until I think I was before you in this case about eight years ago, and we anticipated that this case would probably be on appeal now, and that has not turned out to be true. But I think the most important reason why the writ is necessary is actually two reasons, if you might let me. One is these kinds of discrepancies. You know, there's been a lot of shifting around positions, a lot of difficulty in ascertaining what the government's position is, and so if there was ever a situation where just a clear statement from this court was going to be necessary and beneficial to improving and correcting the record, it is this case where we have these kinds of... What we have before us is the case, the capital case, in which the the arm that can come out of this is an error at the trial that could result in a terrible verdict. I'm not sure why it still isn't an adequate remedy for anything the government does wrong. This notion that there are orders out there in the ether, that we should do something about taking the orders out of the ether, seems to me a very strange and new theory that we... that he is somehow harmed by the very existence of the orders, that we can cure that harm by the long process you talked about, rather than simply letting the case go to trial and see whether there is an attempt or an actual use of the improperly obtained evidence, and if there is by that error some verdict reached as to which you can appeal. I'm not sure why we need an extraordinary equitable remedy to solve what at its root is a theoretical declaration, declaratory relief, as Judge Wilkins said, that these orders were obtained improperly in the past, and it would be improper to use them. Okay, fine. That's the law. We're not doing anything new. You yourself advanced that they can't be used legally, so why isn't it the norm that we would let this just go back for trial, and if there's error, then we hear it on appeal? Well, again, there are orders that remain in effect. So what? So what? There's all kinds of orders that get made that never do result in any prejudice at a trial and never have to be reviewed. That happens in all kinds of cases. I understand the threats of being a representative in a capital case, but as far as the law involved, I don't see why this is any different than any other case, certainly than any other capital case, that if the orders are just out there, you're asking for declaratory relief, not for a correction of an error. We are asking for vague here, and so we're not just asking for declaratory relief. Yeah, you're asking for a vacature of something that right now isn't doing anything to you. That's not correct. It's withholding. If it does something to you, then you get to appeal. It's withholding evidence from us. Beg your pardon? It's withholding evidence. The two orders, at least that they've disclosed, are still in effect. We're evidence to withhold evidence, including the names of witnesses who were implicated in the torture of my client. So that's doing something to us, and that's affecting how we can even have this trial. Whether it will be a fair trial, and we're not up here because we're litigious. We're up here because this case has been going on for nearly 15 years, and our client believes he might be acquitted if he has a fair trial, but this is not a fair trial. The evidence is tainted by torture, and so if I can just briefly correct a few things my friend said, is the military commission prosecutors did not move to reconsider these orders or any orders. They moved to withdraw their pleadings. If you look at the order the military judge actually issued respecting this, that we submitted on Friday, he even notes that the rulings remain in effect, and essentially they're simply redacting. I don't quite know what that means, but they're changing whitewashing order motions that they submitted whilst leaving the orders in effect, and I think most important is the fact that the military commission judge disagrees with the government's new position. He disagrees with our position, and while we, again, we welcome their change of position, we welcome the representations that they won't oppose our requesting relief, there's no reason the military commission judge can or should grant that relief, because unless the position of the government is that the military commission judges are simply there to adopt whatever argument the government has adopted at this particular point in time, military commission judge issued a merits ruling. It's lengthy. It's recent. It remains the law of this case, and in the absence of an order from this court, it will remain the law of this case, and so I understand this court's concerns, but I think the relief we've asked for is incredibly practical to implement. It's the easiest way to ensure the protection of the record on appeal, and it's the only way that this court can ensure that the justice system doesn't become a party to torture. I don't think I ever thought I would have to go back to the American court, but that's what's at issue. So as a prudential matter, government seems to be taking a stronger position now, at least, that it believes that those orders should be vacated and reconsidered. At least I believe that that's what I heard your friend on the other side say. As a prudential matter, why shouldn't we see how that plays out, because if, well, that's the question. Why shouldn't we wait to see how that plays out, and if it doesn't play out, and you don't get relief, and the CMCR doesn't grant relief, you can come back dead. I have two reasons, if I might, Your Honor. The first is this case has already been going on for 15 years, and this government has been given a lot of time to see how things will play out, and asking, you know, we may not be back here, if at all, in, you know, a number of years on this same And I think like judicial misconduct, which was the issue that previously tainted this case, I think torture is just as serious and just as damaging to the public reputation of the proceedings, and there's a need for the court to stamp it out as quickly and decisively and clearly as possible. So prudentially, I would say that those concerns should outweigh. All right, if there are no more questions, Madam Clerk, if you'd give us an adjournment.
judges: Henderson, Wilkins, Sentelle